The "Banco Español de Puerto Rico" et al *v.* Bolivar et al.

Appeal from the District Court of San Juan.

No. 53.—Decided May 23, 1904.

Agency—Principals—Obligations.—An agent authorized to contract loans can legally execute promissory notes in the name of his principal, thereby binding the latter to the fulfillment of the obligation therein contained, even though the money obtained is misapplied, for an act occurring subsequent to the execution of the contract and in which one of the parties had no participation, does not affect rights derived from said contract.

Id.—Validity of Such Acts and Obligations.—Where the principal admits the existence of promissory notes executed in his name by his agent, and the latter acknowledges the genuineness of the signatures and the existence of the debts which such notes represent and that the same are due, the obligations contained therein are valid and may be collected.

Principals—Agents—Ratification.—Ratification by the principal of acts executed by his agent *ipso facto* remedies any defect which might exist with respect to the authority of such agent to act for his principal.

Contracts—Fraudulent Consideration—Nullity.—A fraudulent consideration in a contract renders it void, unless another good and valuable consideration is proved.

Simulated Contracts—Fraud.—A contract for the conveyance of property although duly certified by the notary that the consideration had been paid, is simulated and void if the facts show that it was entered into with the evident intention of preventing the creditors of either of the parties thereto from collecting their claims against the property.

Attachment—Copartnership Property—Liability.—The cautionary notice of attachment of an estate belonging to a copartnership cannot be issued in favor of the solvency of a debtor member thereof, inasmuch as the latter's creditors can attach only the amounts which may be due the debtor partner by reason of profits or liquidation.

Void Instruments not Validated by Recordation.—The recordation of instruments which are null and void in law, are not validated thereby.

Rights of Creditors Against Property Fraudulently Conveyed.—Creditors upon proof of the simulation of a contract, may recover the amount due up to the full value of the property, from the debtor and from the person in possession of the property under title of ownership.

STATEMENT OF THE CASE.

This is an action instituted in the district court by the "Banco Español de Puerto Rico," the firm of J. T. Silva Banking and Commercial Company, and Francisco de Acuña, established in this city, plaintiffs, against Herminio Díaz Navarro, a lawyer and a resident of this city, on his own behalf, Gorgonio Bolívar y Alvarez, a resident of Bilbao, and Basilisa Bolívar y Alvarez, a resident of Munguía, Vizcaya (Spain), defendants; the plaintiff being represented in this Supreme Court by Attorney Antonio Sarmiento Porras, and the defendants by Attorney Herminio Díaz Navarro, said action being an ordinary one for the recovery of money and the annulment of certain contracts, deeds and records; which case is now pending before us on an appeal taken by the plaintiffs from the judgment rendered, which reads as follows:

"Judgment.—In the city of San Juan, Porto Rico, March 28, 1903. An oral and public hearing was had of this declaratory action for the recovery of money and the annulment of certain deeds and records, instituted by the 'Banco Español de Puerto Rico,' J. T. Silva Banking and Commercial Company, and Francisco de Paula Acuña, plaintiffs, represented, at first, by Attorneys Sarmiento and Palacios Rodriguez, and afterwards by Sarmiento alone, against Herminio Díaz Navarro, Gorgonio and Basilisa Bolívar, defendants, represented first by Attorney Díaz Navarro, and subsequently, by Attorney Jacinto Texidor y Alcalá del Olmo, the status of the parties not being mentioned.

"On March 14, 1901, Attorney Antonio Sarmiento, representing the 'Banco Español de Puerto Rico,' instituted a declaratory action against Gorgonio Bolívar, Basilisa Bolívar and Herminio Díaz, praying: 1. That Gorgonio Bolívar y Alvarez be adjudged to pay the ' Banco Español de Puerto Rico ' the sum of $20,400, proceeding from two matured promissory notes, which accompanied the complaint, together with the interest accrued and to accrue thereon, at the rate of twelve per cent. per annum: 2. That the deeds of conveyence of property. executed on the 3d and 19th of January, 1901, by G. Bolívar in favor respectively of Basilisa Bolívar and Herminio Díaz Navarro, before Notary Santiago R. Palmer, of San Juan, be declared null and

void; 3. That the record of said deeds, entered in the Registry of Property of San Juan, be also declared null and void; and 4. That summary proceedings be forthwith instituted against the property conveyed in said deeds for the purpose of recovering the sum claimed. The essential facts of the complaint were stated to be the following: That Juan Arruza, acting as attorney in fact for Gorgonio Bolívar, had contracted the obligations contained in aforesaid promissory notes, dated December 10 and 31, 1900, and payable January 28 and February 12, 1901; that notwithstanding the fact that Gorgonio Bolívar was aware of said obligations, he had on January 3, 1901, alienated property and property rights amounting to $63,000, in favor of his sister Basilisa, whose attorney in fact Herminio Díaz claims to be but without proving such character, he appearing as delivering to the vendor, Gorgonio Bolívar, the aforesaid sum in the presence of the attesting notary, Palmer, and a building lot valued at $2,000 in favor of said Herminio Díaz; that Gorgonio Bolívar, when called upon to acknowledged the signature of his attorney in fact Arruza, affixed to the aforesaid notes, failed to do so, stating that he knew nothing as to the certainty of the debt, while confirming the certainty of the alienations mentioned above, and adding that to cover the aforesaid debts he had retained sufficient property the value whereof amounted to $46,484.90; that the latter consisted of materials appertaining to a match factory which is one of the properties sold to Basilisa, the estimated value of said material being $7,000; an imaginary interest, as silent partner, in the firm of Bolívar, Arruza & Co., $2,900 in a balance in his favor with said firm; $9,000 in a lot of match-boxes given as security for a debt to the same firm; $7,426 in shares of the 'Banco Territorial y Agrícola,' guaranteeing another transaction of Bolívar, Arruza & Co., and $926 in shares of the same bank in the name of Pedro Bolívar, given as security for the proper discharge of his duties as member of the board of directors; and that the aforesaid conveyances were recorded in the Registry of Property of San Juan, early in March, 1901. As legal grounds for the first petition contained in the complaint, plaintiff cited articles 1753, 1755, 1108 and 1727 of the Civil Code; for the second, articles 1275 and 1259 of the same Code; for the third, article 63 of the Mortgage Law; for the fourth, Judicial Order of March 20, 1899, and finally prayed that costs be imposed upon the defendants, pursuant to section 63 of General Order No. 118, series of 1899.

"The complaint being admitted and the registrar of property or-

dered to be notified of the institution thereof so that the proper memoranda might be affixed to the respective records, Attorney Herminio Díaz, on his own behalf and on behalf of Gorgonio Bolívar and Basilisa Bolívar, returned the complaint praying that the same be dismissed, basing said prayer upon the following facts: That Gorgonio Bolívar was not aware that his agent Arruza had given his signature guaranteeing the promissory notes referred to in the complaint, the amount of which was applied to transactions carried on by the firm of Bolívar, Arruza & Co., and not by Bolívar, who, having no knowledge thereof, had effected the transfers mentioned in the complaint in favor of Basilisa Bolívar for the sum of $63,000 which said Gorgonio Bolívar had received from Herminio Díaz, who declared that he was the representative of the purchaser, and for the sum of $2,000 in favor of Herminio Díaz, the notary in both cases attesting the delivery of the price in his presence; that after the aforesaid sales had been perfected, the 'Banco Español de Puerto Rico,' on March 2, applied for the writ of attachment, whereupon Gorgonio Bolívar was requested to acknowledge the promissory notes filed with the complaint, preparatory to the execution proceedings; that Gorgonio Bolívar declared under oath before this court that although the signatures 'Arruza Urrutia' resemble that which he (Juan Arruza) is in the habit of using, he could not declare positively that they were his, as he was not present when said signatures were affixed to the notes; that he did not know whether said Arruza had contracted the debt claimed by the bank, he being positive that when he left for Europe, Gorgonio Bolívar had no debts whatever, nor had he subsequently contracted any personal debt; that not knowing that he owed the sums now sought to be recovered from him, he had effected the sales in question without depositing the value of the property sold, nor was there any need of his doing so, as he had retained a capital of his own amounting to $46,484.90; and that a certificate of the proceedings to secure a conciliation had not been presented with the complaint filed by the bank, on the plea that Basilisa Bolívar was absent. As legal grounds defendants cited articles 1725, 1247, 1275 and 1259 of the Civil Code, Judicial Order of March 20, 1899, judgment of the Supreme Court of May 1, 1897, section 12 of General Order No. 134, series of 1899, articles 358, 1459 of the law of Civil Procedure, and section 63 of General Order No. 118. series of 1899.

"Filing a promissory note to the order of Bolívar, Arruza & Co., of San Juan, for the sum of $4192.49, dated January 3, 1901, and payable February 28, 1901, signed by Gorgonio Bolívar, the same

having been endorsed on January 3, 1901, by Bolívar, Arruza & Co., to Carlos Armstrong, of Ponce, and by the latter, on February 20, 1901, to the J. T. Silva Banking Co., together with papers showing that said note had been protested for non-payment on March 1 before Notary Santiago R. Palmer of San Juan, Attorney Rafael Palacios, on May 17, 1901, instituted an ordinary action on behalf of the J. T. Silva Banking and Commercial Co., and Francisco de Paula Acuña against Gorgonio Bolívar, Basilisa Bolívar and Herminio Díaz, setting out as facts the existence of the accompanying promissory note; that of another promissory note for the sum of $3607.04, attached to the record of execution proceedings, the same being signed by Bolívar, Arruza & Co. on December 18, 1899, with the joint liability of Gorgonio Bolívar, contracted by his agent Juan de Arruza, made to the order of Alejandro Bozzo, endorsed by Bozzo to Samper & Co. of New York, by Samper to the American Colonial Bank and by the latter again to Bozzo, who in turn endorsed it to Francisco de Paula Acuña, said note having been protested on December 17, 1901, for non-payment; the capacity of Juan Arruza as general agent for Gorgonio Bolívar, from March 7, 1894, according to the instrument executed on that date before Notary Guerra; and, finally, the facts relating to the sales made by Gorgonio Bolívar to Basilisa Bolívar and Herminio Díaz, and which are connected with the action instituted by the 'Banco Español de Puerto Rico.' As legal grounds plaintiffs cited articles 532, 455, 461 and 463 of the Code of Commerce, articles 1108, 1727, 1822, 1137, 1275, 1259 and paragraph 3 of 1291, of the Civil Code, article 33 of the Mortgage Law, Judicial Order of March 29, 1899, General Order 190 of 1899, Judicial Order of August 31, 1899, and section 63 of General Order No. 118, series of 1899. They then prayed that judgment be rendered ordering Gorgonio Bolívar to pay J. T. Silva Banking and Commercial Company the sum of $4192.49, with the legal interest thereon for delay; that the deeds of sale of January 3 and 19, 1901, executed by Gorgonio Bolívar in favor respectively of Basilisa Bolívar and Herminio Díaz be declared null and void, as also the records thereof entered in the Registry of Property of San Juan; and that for the purpose of collecting the sums due by Gorgonio Bolívar to J. T. Silva Banking and Commercial Company and to Francisco de Paula Acuña, the property conveyed by aforesaid deeds be forthwith levied upon, as to the former debt, and as to the latter, as soon as executory judgment shall be rendered in the summary proceedings instituted for the recovery thereof.

"Attorney Herminio Díaz answered the aforesaid complaint on his own behalf and on behalf of his co-defendants, setting forth, in addition to the fact of the existence of the copartnership of Bolívar, Arruza & Co., organized with a capital of fifty thousand *duros* on April 13, 1893, for three years and subsequently extended, to that of the existence of a power of attorney dated March 7, 1894, whereby Juan Arruza was empowered by Gorgonio Bolívar to borrow money, but not to bind him as surety for obligations foreign to his private business, and to that of the acknowledgment of the existence of the obligations sought to be enforced,—all the facts adduced in the answer to the complaint of the 'Banco Español de Puerto Rico;' and as legal grounds he cited articles 1719, 1727, 1268, 1262, 1822, 1725 and 1259 of the Civil Code, 148, 267, 288 of the Code of Commerce 358 and 459 of the Law of Civil Procedure, Judicial Order of March 20, 1899, General Order No. 134 of 1899, and section 63 of General Order No. 118, series of 1899, and closed with the prayer that the complaint be dismissed, with costs against the plaintiff.

"Counsel for J. T. Silva Banking and Commercial Company and Francisco de Paula Acuña having requested that the cases mentioned in the foregoing findings be consolidated in conformity with articles 161 and 162 of the Law of Civil Procedure, said request was acceded to.

" The submission of public documents and examination of books of commerce were proposed as evidence by both plaintiff and defendant in the second of the cases mentioned. In addition thereto, counsel for defendants asked that the witness Miguel Mujica be examined, and the plaintiff filed with his written proposal of evidence a certificate as to the existence of the promissory note in favor of Alejandro Bozzo, mentioned in the complaint, said certificate being issued by the clerk of this court, who had before him the original thereof, on file with the record of the execution proceedings instituted by Francisco de Paula Acuña against Gorgonio Bolívar and Bolívar, Arruza & Co., while the defendants submitted a certificate of the deed accepting and ratifying the sale of January 3, 1901, connected with the complaint and answer thereto, the former being executed by Basilisa Bolivar under date of July 1, 1901, before Notary Francisco de Santiago Marín of Bilboa (Spain).

"The plaintiff and defendant in the first case mentioned proposed as evidence the submission of public documents, examination of books of commerce, expert testimony and the testimony of wit-

nesses, while counsel for the defendants requested, moreover, the acknowledgment by Basilisa Bolívar of a letter accompanying his written proposal of evidence, and the plaintiff submitted a receipt signed by P. Bolívar to be acknowledged by the latter, as also the two promissory notes filed with the record.

"Of the documentary evidence submitted by the plaintiff and the defendant, there were joined to the record a certified copy of the power of attorney executed on March 7, 1894, before Notary Mauricio Guerra Mondragón by Gorgonio Bolívar in favor of Juan Arruza, and another of the deeds of sales of real property executed on January 3 and 19 by Gorgonio Bolívar in favor of Basilisa Bolívar and Herminio Díaz, respectively.

"In conformity with the proposition that expert testimony be taken, made by both parties, the experts Pedro Gandía, Antonio Méndez and Juan Vidal valued the materials and articles found in the match factory at Santurce that had belonged to Gorgonio Bolívar, at $2,563.40 according to the detailed list presented by them.

"From the documentary evidence submitted by the plaintiff it is shown that Gorgonio Bolívar appears on the list of debtors presented by the firm of Bolívar, Arruza & Co., on March 22, 1901, in proceedings for the suspension of payments of aforesaid firm, with a debit of $15,502.22, and on the list of creditors with a credit of $2907.17, according to certificate issued by the clerk of this court; that the Treasurer of Porto Rico certified that there exists no schedule signed by Gorgonio Bolívar for purposes of the assessment of his property, for the fiscal year of 1901-02; that the Registrar of Property of Caguas certified on September 6, 1902, that there was at said date no property nor property right recorded in the registry in the name of Gorgonio Bolívar, nor any title in his favor pending entry upon the record, and the Registrar of San Juan certified that Gorgonio Bolívar appeared in his registry with two mortgage credits for four hundred and two hundred and twenty-nine provincial *pesos;* that the clerk of the Supreme Court certified that on February 23, 1901, Herminio Díaz, acting as attorney for Gorgonio Bolívar, had filed a writing in said court announcing that he desisted from the appeal in cassation taken in execution proceedings instituted against Vilá for the recovery of a debt; that to the record were joined three instruments of protest executed by Manuel Paniagua Oller on January 2, 1901, two of them in his capacity as attorney in fact for J. T Silva, and the other, in March, 1901, as representative of the joint-stock company J. T. Silva Banking and

Commercial Company, the two first mentioned protests having reference to two promissory notes made to order, for $1303.75 and $2847.23, by Juan Arruza as attorney in fact for Gorgonio Bolívar, on October 22, 1900, payable December 31, of the same year, and the other to a promissory note payable to order, signed by Gorgonio Bolívar on January 3, 1901, and maturing on February 28 of the same year, for the sum of $4192.40, which note is the basis of this action; to the record there was also joined an instrument of protest dated December 11, 1900, executed by the cashier of the American Colonial Bank of Porto Rico, with reference to a promissory note for $3607.04, made by Bolívar, Arruza & Co., and signed as surety by Juan de Arruza as Agent for Gorgonio Bolívar, November 15, 1900, payable December 15 of the same year, which note is likewise sought to be collected in this action; that according to a certificate issued by the clerk of this court, L. Mayol & Co., of Barcelona, filed a complaint in intervention of better right in the execution proceedings instituted by Francisco de Paula Acuña against Gorgonio Bolívar, said complainant alleging a preferred right to recover the sum of 47,064.85 *pesetas* from the proceeds of one thousand boxes of matches attached in the execution proceedings which were given to the complainant in intervention as security for the payment of aforesaid sum the execution creditor having acquiesced in said complaint. From the same certificate it appears that Juan Arruza, as managing partner of Bolívar, Arruza & Co., and agent for Gorgonio Bolívar, had acknowledged before the presiding judge of this district court, the signature affixed to the promissory note of November 15, 1900, to the order of Alejandro Bozzo, sought to be recovered in this suit.

"From the proof of confession in court, proposed by the plaintiff, it appears that the defendant Basilisa Bolívar declared under indecisive oath that although she had not conferred power of attorney upon Herminio Díaz Navarro, she had authorized him by a letter dated December 9, 1900, to represent her in all acts and contracts in which she was concerned, including the acceptance of deeds of sale; that she had possessed the sum of $63,000, proceeding from money given her by her deceased husband, who had been a sailor, as also from presents made her by uncles in America, and from her own savings, without being obliged to go into any business in order to acquire said sum; and that she was informed of the purchases made in her name by Díaz, pursuant to the authorization she had given him, the same having been ratified by her.

"From the proof of examination of commercial books proposed by the plaintiff, it appears that on page 295 of the stock book of the 'Banco Territorial y Agrícola de Puerto Rico' Gorgonio Bolívar is credited with one hundred and ninety-two shares, under date of January 1, 1901, and after that there is only one entry which reads: 'February 7, To transfer of these shares to the Colonial Bank, payable to bearer, 20, 62, 193;' and that literal copies of the entries from the books of Bolívar, Arruza & Co., referring to accounts of all kinds with Gorgonio Bolívar, were joined to the record.

"From the proof of private documents, proposed by the plaintiff, it appears that Pedro Bolívar acknowledged that as agent for Gorgonio Bolívar, he had given a receipt to Jorge Saldaña, under date of February 28, 1901, for that month's rent of a house in Santurce.

"From the evidence of witnesses presented by said plaintiff, it appears that Pedro Bolívar, Gumersindo Suárez, Carlos Conde, Conrado Palau, Jorge Saldaña and Juan de Arruza, testified at the trial.

"From the proof of public documents submitted by the defendants, it appears that Notaries Santiago R. Palmer and Mauricio Guerra certified that prior to January 3, 1901, no protest had been entered in their respective offices by the ' Banco Español de Puerto Rico' against Gorgonio Bolívar, with reference to any promissory note; and the clerk of this court certified that prior to said date there was in his archives no record of any case decided or pending against Gorgonio Bolívar; that to the record was joined a certificate issued by said clerk referring to various proceedings in the executory action instituted by Francisco de Paula Acuña against Bolívar, Arruza & Co., and Gorgonio Bolívar for the collection of the promissory note mentioned herein; a certified copy of the contract constituting the copartnership of Bolívar, Arruza & Co., executed on April 13, 1893, before Notary Guerra, by Gorgonio Bolívar, Miguel Mujica, Pedro Bolívar and Juan Arruza, for the term of three years from April 1, 1893; and a certificate from the commercial registry to the effect that the duration of said copartnership had been extended by deed of April 1, 1899, executed before Notary Palmer; a certified copy of said deed, showing that the extension was for three years from the date of the execution thereof, being also joined to the record, as evidence.

"From the proof of private documents introduced by the defendants, it appears that Basilisa Bolívar acknowledged having

written the letter filed by her attorney with his written answer to the complaint brought by the 'Banco Español,' she likewise declaring that on the strength of said letter Díaz Navarro had represented her in the execution of the deed of purchase and sale of January 3, 1901, which deed she accepts and ratifies.

"From the proof of commercial books offered by the defendants it appears that to the record were joined two accounts copied from the books of the 'Banco Español de Puerto Rico,' with Bolívar, Arruza & Co., and Gorgonio Bolívar, and an account copied from the books of Bolívar, Arruza & Co. with the 'Banco Español de Puerto Rico.'

"A day having been set for the oral trial of this cause, the representative of the defendant raised the incidental issue of annulment of proceedings, alleging that a certificate of the action to avoid litigation had not been filed with the complaint, which was overruled by the court, and after taking the evidence submitted by both parties the attorneys presented such arguments as were deemed pertinent to their respective claims.

"In the conduct of this trial all the legal formalities have been observed.

"Associate Judge José Tous Soto prepared the opinion of the court as follows:

"Inasmuch as Juan Arruza had been authorized by Gorgonio Bolívar to contract loans, he could validly execute the promissory notes the amount whereof was demanded by the 'Banco Español,' thereby binding his principal to the fulfillment of the obligation contained in said instruments; nor can it be successfully alleged that the agent had applied the money obtained by virtue of the signature affixed to said promissory notes to the uses of the commercial association of Bolívar, Arruza & Co. whereof he was a partner, for an act occurring subsequently to the execution of the contract in which act one of the contracting parties had had no participation, could not affect his rights arising from the contract, apart from the fact that such act has not been duly substantiated.

"Gorgonio Bolívar having, in his answer to the complaint, admitted the existence of the above-mentioned promissory notes, and Juan de Arruza having acknowledged the genuineness of the signatures affixed thereto by him as agent for Gorgonio Bolívar and managing partner of the firm of Bolívar, Arruza & Co. as also the existence of the debts in question, and the term for payment thereof hav-

ing expired, the obligations contained therein are perfectly valid and demandable.

"Gorgonio Bolívar having, in his answer to the complaint of J. T. Silva Banking Co., recognized the existence and genuineness of the promissory note, signed by Gorgonio Bolívar, personally, and sought to be collected by aforesaid firm, the obligation contained in said note is also valid and demandable, the term of payment thereof having expired.

"As to the annulment of the deed of sale of January 3, 1901, because Díaz Navarro had no power of attorney from the purchaser Basilisa Bolívar to deliver the purchase price and approve the deed, inasmuch as the contract of purchase and sale has been ratified by the said Basilisa Bolívar, in conformity with article 1259 of the Civil Code, there is no need of discussing the point as to whether or not Díaz Navarro could approve said deed without a power of attorney executed in due form, since said ratification corrects whatever legal defect might have existed in Díaz Navarro's power to act as representative of the purchaser.

"As to the nullity of said contract and of the one entered into between Herminio Díaz and Gorgonio Bolívar, on the 19th of the same month and year, because there was no consideration involved; inasmuch as it is stated in said contracts that the purchasers had paid a certain sum of money for the properties sold, this fact constitutes the consideration, in conformity with article 1274 of the Civil Code; a consideration which, on the other hand, is to be presumed though not expressed, unless the contrary be proved, according to article 1277 of the same Code; and the plaintiff has not proved nor attempted to prove, that the delivery of the price had not been made, as certified to by the notary in both contracts.

"As there exists no defect of nullity in the contracts, which is the reason for requesting the nullity of the deed containing them, said nullity cannot properly be declared.

"As to the petition that the property transferred in the aforesaid deed be held to answer for the debts claimed, pursuant to Judicial Order of March 20, 1899, the plaintiff cannot invoke the presumption of simulation, as provided under paragraph 2 of said Judicial Order, inasmuch as the notary has certified to the delivery of the price of the sales in the respective deeds; therefore, it devolves upon him to prove that in said contracts a simulation has been practised by Gorgonio Bolívar, to defraud his creditors, with the connivance of the purchasers.

"The evidence submitted for that purpose is insufficient to establish simulation or fraud, for the fact that Pedro Bolívar, on February 28, 1901,—that is, after January 3, 1901, when Gorgonio Bolívar sold to his sister Basilisa Bolívar, among other immovable property, the Santurce house occupied by Jorge Saldaña—is shown to have given to Saldaña a receipt for the rent of said house, as agent for Gorgonio Bolívar, cannot, even considered by itself, be taken as indicating a simulated sale, when account is had of the short time elapsed since the latter transaction, nor, if it did, could it prejudice Gorgonio Bolívar or his sister, because it has reference to an act entirely foreign to them; neither, for the latter reason, is sufficient evidence of simulation afforded by the fact that Herminio Díaz had presented in the Supreme Court a writing on behalf of Gorgonio Bolívar, under date of February 23, 1901, that is, after January 3, withdrawing the appeal in cassation taken in execution proceedings instituted by Gorgonio Bolívar against the Estate of Vilá, for the recovery of a mortgage debt, which was assigned by the former to his sister Basilisa in a deed of that date, especially so, inasmuch as such fact may be explained by the attorney's desire to spare his client delays and expenses, by entering upon the record the assignment of the mortgage debt demanded.

Neither does the fact that the purchasers in aforesaid deeds were the sister of the vendor and his attorney, constitute any evidence of simulation; and although it is strange that the widow of a ship machinist, solely with the inheritance from her husband, gifts received from her uncles in America and her own savings, could raise $63,000 and invest said sum in the acquisition of properties situated in distant foreign countries, such an unusual occurrence can exert no influence on the mind of the judge, in view of the positive and uncontroverted fact of the delivery of aforesaid sum in the act of executing the deed.

"Without wholly disregarding the claims of either party, and deciding the matter in accordance with equity, each party should pay the costs incurred in the defense of his case.

"In view of the articles cited and others of the Law of Civil Procedure applicable to the case, as also General Order No. 118, series of 1899, we adjudge that partly sustaining and partly dismissing the consolidated actions, we should condemn and do condemn Gorgonio Bolívar to pay to the 'Banco Español de Puerto Rico' the sum of $20,400, which is the amount of the promissory notes claimed, and the interest accrued and that may accrue, at the rate of one per

cent. per month, from the day they respectively fell due to that of the payment thereof in full; and also to pay to J. T. Silva Banking and Commercial Company the sum of $4,192.49, amount of the promissory note filed with the complaint, and interest for delay at the rate of six per cent., from the day after the obligation fell due to that of its payment; and we should dismiss and do dismiss the petition for the annulment of the deeds of purchase and sale executed on January 3 and 19 before Notary Santiago R. Palmer, of San Juan, by Gorgonio Bolívar, in favor of Herminio Díaz, the second deed by the latter in his own right, and the former as attorney in fact for Basilisa Bolívar; and likewise dismiss the petition that the properties transferred by said deeds to be held to answer for the debts sought to be recovered in this action without special imposition of costs. The respective cautionary notices are ordered to be cancelled in the registry of property. So by our judgment we pronounce, order and sign.—Juan Morera Martínez, Frank H. Richmond, José Tous Soto."

From the foregoing judgment the plaintiffs took and appeal which was allowed; the record was forwarded after citation of the parties, who appeared before this Supreme Court, and having been given an opportunity to examine the papers, and availing themselves, by mutual consent, of the right allowed them under article 875 of the Law of Civil Procedure, submitted their arguments in writing.

*Mr. Sarmiento,* for appellants.

*Mr. Díaz Navarro,* for respondents.

Mr. Justice Figueras, after making the above statement of facts delivered the opinion of the court.

The findings of fact contained in the judgment appealed from are accepted.

Pedro Bolívar, a brother of, and attorney-in-fact for, Gorgonio Bolívar, testified on March 13, 1903, that his sister Basilisa had rich relations in America, but he did not know whether they had made her important gifts in money; that Gorgonio came from Spain in 1900 and took up his residence at the house occupied by the deponent which is the property of the former; that he came to look after his interests and to

renew the contract of the firm of Bolívar, Arruza & Co.; that he examined the situation of the latter, by taking inventories and going over them; that Bolívar, Arruza & Co. owed L. Mayol & Co., of Barcelona, a certain sum the payment of which Gorgonio had guaranteed with 2000 boxes of matches, delivered to a member of the firm of Gilet, of Ponce.

On folio 206 containing the loan account of the "Banco Español de Puerto Rico" with Bolívar, Arruza & Co., of which Gorgonio is a silent partner, appears the amount due by the latter to aforesaid institution on account of the obligations dated December 10, and 31, 1900, which are also the object of the present demand.

The promissory note signed by Gorgonio Bolívar to the order of Bolívar, Arruza & Co. for the sum of $4192.49, which by endorsement came into the hands of the J. T. Silva Banking and Commercial Company, bears date of January 3, 1901, which is that of the sale by Gorgonio Bolívar to his sister Basilisa, of thirteen pieces of property and two mortgage credits, aggregating $63,000 (Folios 1 and 244 of the record).

At the trial, March 3, 1903, Gumersindo Suárez and Conrado Palau testified that Gorgonio Bolívar had personally spoken to them as members of the board of directors of the 'Banco Español,' about contracting a loan of 20,000 *pesos,* provincial money, with the latter for the purpose of building a house, and that in fact a house was built in Santurce, according to the testimony of Suárez, and several, according to Palau's testimony. (Folio 397 *et seq.* of the record).

Carlos Conde also testified at the trial that Gorgonio Bolívar had urged him to procure for him an interview with Antonio Sarmiento (secretary of the bank) for the purpose of talking over the transaction he had pending with the bank, and that he knew that Bolívar had offered as security for the contemplated deal, a mortgage executed in his favor by one Vilá.

Among the properties sold by Gorgonio to his sister Basilisa, on January 3, 1901, there appears, under No. 15, a mortgage credit for 20,000 *pesos,* provincial money, due him by Jaime Vilá, which credit, originally in favor of Bolívar, Arruza & Co., was transferred, for value on account, to Gorgenio Bolívar, subsequent to January 19, 1901.

Gorgonio Bolívar had failed to deposit in a bank or any other institution, the amount of his obligations, and the total of the properties stated to have been retained by him to cover the same, referred to in the first finding of the judgment appealed from, was reduced to the sum shown in the expert appraisal contained in the ninth finding of aforesaid judgment.

At the request of the plaintiff, cautionary notice was entered of an attachment levied on a piece of property consisting of 14 *cuerdas*, deducting therefrom 8,314 square meters, and another consisting of 4 *cuerdas* more or less of land, which might be the proportion alloted to Gorgonio Bolívar in the liquidation of the firm of G. Bolívar & Co.; and for the purposes of article 165 of the regulations for the execution of the Mortgage Law, it was decided that the former would be liable for $10,000 of the principal and $1,000 for costs, and the other for $500 of principal. (Folios 89 and 123).

The letter in which Basilisa Bolívar y Alvarez authorizes Attorney Herminio Díaz to represent her, literally reads: " Spain, Bilboa, Munguia, December 9, 1900. Mr. Herminio Díaz, Attorney at Law, San Juan. Dear Sir: I have not the pleasure of your acquaintance, but by the report of persons who know you I am aware of the gentlemanly qualities which adorn you; that you are a practising lawyer in your city, and that for the purpose of authorizing you to represent me there is no need of executing a power of attorney, according to the laws now in force in your island, wherefore I hereby take the liberty to appoint you as my representative with power to intervene in all judicial and extra-judicial matters which I have or may have in your island, and to conduct the same with

your accustomed discretion and solicitude. Not doubting that you will accept this appointment, I remain your obedient servant, Basilisa de Bolívar."

The *cédula* (personal identification paper) produced by aforesaid lady upon executing the deed of acceptance and ratification of the purchase, mentioned in the closing portion of the sixth finding of fact contained in the judgment appealed from, is of the eleventh class. (Folio 125).

The first, second, third and fourth conclusions of law, contained in the judgment appealed from, are accepted.

The statement of a false consideration in contracts shall render them void, unless it be proved that they were based on another valid and lawful one, according to article 1276 of the old, and section 1243 of the revised Civil Code.

Although it cannot be denied that a consideration appears in the contract of sale executed January 3, 1901, between Gorgonio Bolívar y Alvarez and his sister Basilisa, since the notary certifies that the latter paid $63,000 for the properties sold (article 1274 of the Civil Code), there has been no attempt as would have been proper after the denial, to show by what means Herminio Díaz Navarro had raised said sum here, inasmuch as in the letter of authorization no reference is made to the subject, nor is the purchase mentioned nor is there even any intimation as to the manner in which such an important sum had been remitted from Spain to this city, as belonging to the purchaser, to be used as a real consideration in an actual sale, and thus positively becoming the property of the vendor who, in that case, could have stated upon requisition, that he retained in his possesion a sum sufficient to cover his liabilities, since he also stated that he had nowhere deposited the amount thereof, thereby altering his subsequent financial position and, consequently, the judicial aspect now presented by the contract executed.

The foregoing facts taken together with the vague and improbable manner in which Basilisa explains how she came by

such a fortune, when her *cedula* is only of the eleventh class, and the surprise caused by her inexplicable determination to acquire now so many estates and credits in this country, of which she is an alien, lead to the conviction that in this contract there prevailed only an intention to prevent the creditors of the vendor from collecting the money due them by levying upon the properties apparently sold, and this produces a simulated contract, according to Judicial Order of March 5, 1899.

To understand better the spirit of said order, we must refer to its preamble wherein it is expressly stated that contracts executed with the said object in view are "highly injurious to the agricultural and commercial interests of the country, inasmuch as by undermining their very foundation, they absolutely destroy the credit of these two only resources of wealth, whose development and life are thus rendered impossible," and it is further stated that such contracts are "immoral, and hence the necessity of making more effectual the prohibition already contained in our law;" from which it follows that aforesaid provision must be strictly construed and applied so as to avoid the evils pointed out therein.

The same intention prevailed in the other contract of sale of a building-lot, executed on January 19, 1901, between Herminio Díaz Navarro, as purchaser and Gorgonio Bolívar, as vendor, inasmuch as these transactions resulted in the insolvency of the latter, and hence the prejudice to the interests of the creditors, wherefore both contracting parties must together abide by what the evidence and law may determine.

The simulation of said contract is indisputable, and to be convinced of this, we have but to remember that Gorgonio Bolívar had full knowledge of his indebtedness to the 'Banco Español' through the books of Bolívar, Arruza & Co. of which firm he was a silent partner; he was also aware of said debt because he himself had approached two of the directors of the bank for the purpose of obtaining a loan of 20,000 *pesos,* and, moreover he could not be ignorant of the existence of

other debts against him, since the one now demanded by the firm of J. T. Silva Banking and Commercial Company was contracted by Bolívar himself on January 3, 1901, the very day on which he executed the deed of sale in favor of his sister Basilisa, and other debts had given rise to protests prior to that date, of which he was likewise informed, since they had been negotiated through his agents; and with this perfect knowledge of his true financial situation, Bolívar had conceived the plan which was afterwards executed.

The evidence has shown that after the sale made by Gorgonio Bolívar to his sister, spontaneous acts occurred which corroborate the simulation of the contract, namely, the collection by his brother Pedro, acting as Bolívar's agent, of the rents for January and February of a house occupied by Jorge Saldaña, which house had ceased to be the property of said Bolívar, if the conveyance of January 3, 1901, was a *bona fide* sale; the statement made at the hearing by aforesaid Pedro, on March 13, 1901, that he lived in a house belonging to his brother, when, if there had been a real contract, said house at that date was already the property of Basilisa; the withdrawal on February 13, 1901, of an appeal on behalf of Gorgonio Bolívar by the same attorney who had been authorized by Basilisa to represent her in the execution of the contract and to deliver the purchase money, which appeal had been taken in an action for the recovery of a mortgage debt, when, if the sale in question had been a *bona fide* transaction, said mortgage debt already belonged to Basilisa, in which case the withdrawal of the appeal could be made only in her name; the transfer of aforesaid debt to the credit of Gorgonio, entered in the books of Bolívar, Arruza & Co. subsequently to the date of the sale; and, lastly, the offer of this same mortgage debt made by said Bolívar to Antonio Sarmiento, Secretary of the "Banco Español," as a guarantee for the transaction he had in mind, which guarantee could have no object other than the settlement of

these actions that had already begun, because the obligations in favor of the bank were guaranteed.

Such is the conclusion to be drawn from the testimony given by Carlos Conde, on March 13, all of which details, by their very simplicity and naturalness are clear indications that Gorgonio, his brother and agent Pedro, and his attorney, knew that the estates and credits sold had not, as a matter of fact become the actual property of Basilisa, but, on the contrary, belonged to the apparent vendor thereof, and here we have the reason for those declarations and acts that were in perfect keeping with the real situation.

No less light is thrown upon the contemplated simulation by the tenor of the letter of authorization dated in Munguia, Bilbao (Spain), December 9, 1900, as reproduced in one of the findings of fact, which letter is absolutely silent as to the means whereby the writer's agent was to provide himself with the necessary funds to carry out the contract; by the few days elapsed between that date and January 3, 1901, when the deed of sale was executed upon receipt of the purchase money, amounting to $63,000, a sum almost equal to 100,000 Spanish *pesos;* by the silence of Gorgonio Bolívar in regard to this important sum, when summoned by the court on March 11, of aforesaid year, and which, had there been an actual sale, he would have retained, or, at least, invested in property on his private account; and by the certificate of the Treasurer of Porto Rico to the effect that from the record of assessment of property for the fiscal year 1901-2, no schedule appears to have been presented bearing the signature of Gorgonio Bolívar Alvarez; all of which circumstances tend to show the state of insolvency in which Bolívar knowingly endeavored to place himself in order to escape satisfaction of the obligations he had previously contracted.

The cautionary notices of attachment of two estates, taken from the registry of property, and appearing in the record, cannot be alleged in favor of the solvency of Gor-

gonio Bolivar, because it should be remembered that said estates are recorded in the name of G. Bolívar & Co., and, therefore, involved in said copartnership, now in liquidation, of which Gorgonio is a silent partner, and the attachment, and subsequent collection, can cover only the amounts which may be due the debtor partner by reason of profits or liquidation, according to article 174 of the Code of Commerce.

The contract executed on January 3, 1901, being based on a consideration which the evidence has shown to be false and no attempt even having been made by the defendants to prove as it was their duty to do, that it was based on another real and lawful one, and inasmuch as in said contract and in the one executed on the 19th of the same year (sic) there was the same intention, the debtor having the same object in view in both cases, it must be concluded that they are void and have no effect whatsoever, as are likewise void the title recorded in the registry of property and, therefore, also the records to which said titles may have given rise, because according to article 33 of the Mortgage Law, the record of instruments which are null and void in accordance with the law, are not rendered valid thereby.

Creditors, upon proving the simulation, and for the purpose of collecting their claims, or demanding that the same be guaranteed, may bring actions against their debtor or the party who as owner, holds the latter's property, said holder being responsible in such cases for the amount due by the direct debtor up to the full value of said property, according to the provisions of section 3 of the Judicial Order of March 5 and 20, 1899.

The judgment rendered by this court on March 2, 1900, which is cited as a legal ground in the brief, has no application to the case at bar.

The costs of the trial should be taxed against the defendants, and those of the appeal declared without special imposition.

In view of article 1259 of the old, or section 1226 of the revised, Civil Code, and others cited in this judgment, together with Judicial Orders of March 5, and 20, 1899, the Act of the Legislative Assembly of this Island, approved March 12, 1903, General Order No. 118, series of 1899, and articles 358, 364 and 371 of the Law of Civil Procedure, we adjudge that, affirming the judgment appealed from, as to the portion accepted, and reversing the same as to the other portions, we should condemn and do condemn Gorgonio Bolívar y Alvarez to pay the following debts: To the "Banco Español de Puerto Rico" $20,400, beside the interest accrued or that may accrue, at the rate of 12 per cent. per annum; and to the firm of J. T. Silva Banking and Commercial Company, $4,192.49, besides the legal interest from the date of default in payment. As to the contracts of sale, the deeds of January 3 and 19, 1901, and the records to which said contracts may have given rise, the same are declared null and void and without any effect whatsoever. And we declare that for the purpose of collecting the sums due by Gorgonio Bolívar to the "Banco Español de Puerto Rico" and to J. T. Silva Banking and Commercial Company, as also the one having reference to Francisco de P. Acuña, the properties described in aforesaid deeds be forthwith levied upon as to the two first mentioned debts, and as soon as executory judgment shall have been rendered in the summary proceeding instituted for its recovery, as to the latter. The costs of the trial are imposed upon the defendants and no special imposition is made of the costs on appeal.

Chief Justice Quiñones and Justices Hernández, Sulzbacher and MacLeary concurred.